UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| MERIDIAN GROWERS PROCESSING, INC., et al., | No. 1:24-cv-00781-KES-EPG |
|---|---|
| Plaintiffs, | ORDER GRANTING DEFENDANT J.P, MORGAN CHASE BANK'S MOTION TO DISMISS |
| v. | |
| J.P. MORGAN CHASE BANK, N.A., et al., | (Doc. No. 10) |
| Defendants. | |

This matter is before the Court on the motion to dismiss filed by defendant J.P. Morgan Chase Bank ("Chase") on July 19, 2024. (Doc. 10.) On July 22, 2024, the pending motion to dismiss was taken under submission. (Doc. 11.) For the reasons explained below, Chase's motion to dismiss is granted.

**BACKGROUND**

On June 12, 2023, plaintiffs Meridian Growers Processing Inc., ("Meridian") and Partners Personnel Management Services, LLC, ("PPMS") filed a complaint against John Doe and Does 2–50 in the Madera County Superior Court. (Doc. 1-3 at 4.) Plaintiffs filed a first amended complaint ("FAC") adding defendant Chase on May 30, 2024. (Doc. 1-1 at 5.) Chase was served with a summons and copy of the FAC on June 3, 2024. (Doc. 1-1 at 2–17.) On July 3, 2024,

1

1     Chase timely filed a notice of removal in this court.  (Doc. 1.)

2        As alleged in the FAC, Meridian provides processing services for growers of pistachios in California.[1]  (Doc. 1-1 at ¶ 11.)  PPMS provides staffing services to Meridian.  (*Id.* at ¶ 12–13.)  On September 14, 2022, PPMS emailed Meridian a summary of outstanding invoices.  (*Id.* at ¶ 22.)  On September 21, 2022, Meridian employee Kathy Flores and PPMS employee Ashleigh Haddad exchanged three additional emails regarding an updated summary of outstanding invoices, reflecting a balance of over $400,000 owed by Meridian to PPMS.  (*Id.* at ¶¶ 23–25.)  On September 28, 2022, Ms. Flores received a response in the same email chain, from defendant John Doe posing as Ashleigh Haddad, requesting an update on the status of payments, and stating that PPMS preferred to receive future payments to a new bank account.[2]  (*Id.* at ¶¶ 30.)  John Doe used an email address virtually identical to Ashleigh Haddad's email address, and he also created fake accounts with email addresses virtually identical to those of the other PPMS parties on the September 21st emails.  (*Id.* at ¶¶ 27–29.)

       Ms. Flores replied to John Doe, believing she was responding to PPMS, stating that Meridian had already paid for certain invoices and requesting confirmation of receipt of those payments.  (*Id.* at ¶ 31.)  In response, John Doe falsely confirmed receipt of prior payments into PPMS's old account and provided ACH information for PPMS's supposed new bank account at Chase (the "Fraudulent Account").  (*Id.* at ¶¶ 16–18, 32).  The Fraudulent Account was actually the checking account of an unnamed individual not identified in the FAC.  (*Id.* at 19.)  John Doe requested Ms. Flores to "update accordingly and ensure payments going forward" were sent to the new account.  (*Id.* at ¶ 32.)  Subsequently, Meridian submitted three payment orders to its bank to wire funds to the Fraudulent Account.  (*Id.* at ¶ 48.)  First, on September 30, 2022, Meridian instructed its bank to wire $142,756.91 for "Invoice # 500065793" to the account, listing "Partners Personnel Management" as the recipient with an email address of

---

[1] The court presumes the factual allegations in the FAC to be true in evaluating the motion to dismiss.  *See Murguia v. Langdon*, 61 F.4th 1096, 1106 (9th Cir. 2023).

[2] Plaintiffs allege that John Doe "hacked, phished, and/or intercepted emails between Meridian and Partners Personnel."  (*Id.* at ¶ 14.)

1   "espererepay@espererholdings.com." (*Id.* at ¶¶ 33–35.) Second, on October 11, 2022, Meridian
2   instructed its bank to wire a total of $132,266.80 for "Invoice # 500066988" and "Invoice #
3   500068150" to the account, listing the same recipient and email address twice. (*Id.* at ¶¶ 38–40.)
4   Third, on October 17, 2022, Meridian instructed its bank to wire a total of $107,330.04 for
5   "Invoice # 500069598 . . . Invoice # 500057515-1 . . . Invoice # 500057516-1" and "Invoice #
6   500071050" to the account, listing the same recipient and email address four times. (*Id.* at ¶¶ 43–
7   45.)

8   Plaintiffs allege that the Fraudulent Account "was the personal bank account of an
9   unnamed individual who is a retired veteran." (*Id.* at ¶ 17.) Meridian believed it was issuing
10  payments to PPMS and did not know when it submitted the payment orders that the Fraudulent
11  Account belonged to the retiree. (*Id.* at ¶¶ 36, 37, 41, 42, 46, 47.) "Within just 17 days,
12  Defendant Chase processed three wire transfers into the Fraudulent Account, belonging to [the
13  retiree], totaling $382,353.75."[3] (*Id.* at ¶ 92.) "The funds transferred to the Fraudulent Account
14  were immediately depleted. Defendant John Doe One transferred the fraudulently obtained funds
15  from Meridian in the Fraudulent Account to another account." (*Id.* at ¶ 88.) Plaintiffs allege that
16  Chase knew the retiree did not work, and that the retiree's income came from pensions and
17  retirement accounts. (*Id.* at ¶¶ 85, 86.)

18  Based on the allegations summarized above, the FAC asserts five causes of action. The
19  first and second causes of action are for conversion and are brought by Meridian and PPMS
20  separately against John Doe and Does 2–50. (*Id.* at ¶¶ 50–65.) The third cause of action is for
21  fraud and is brought by Meridian against John Doe and Does 2-50. (*Id.* at ¶¶ 66–77.) The fourth
22  cause of action is for wrongful payment of wire transfer in violation of California Uniform
23  Commercial Code §§ 11101 *et seq.*, and it is brought by Meridian and PPMS against Chase and
24  Does 2–50. (*Id.* at ¶¶ 78–96.) Finally, Meridian and PPMS seek declaratory relief against Chase,
25  John Doe, and Does 2–50. (*Id.* at ¶¶ 97–100.)

26  With respect to the fourth cause of action, plaintiffs allege that Chase "had actual
27
28  [3] Plaintiffs do not specify the starting date for this seventeen-day period.

3

1   knowledge of [an] inconsistency between the intended beneficiary name, Partners Personnel, and
2   the Fraudulent Account number belonging to [the retiree]." (*Id.* at ¶ 81.)  They further allege that
3   "Chase was not entitled to rely solely on the intended beneficiary account number as the proper
4   identification of the beneficiary wire transfer order" because "the designated beneficiary and
5   account name bear no resemblance to each other and have nothing common with each other." (*Id.*
6   at ¶¶ 93, 94.)  Neither Meridian nor PPMS maintain accounts with Chase, and Meridian has never
7   wired money to PPMS through Chase.  (*Id.* at ¶¶ 83, 84.)
8         On July 19, 2024, defendant Chase filed a motion to dismiss the claims asserted in the
9   FAC against it, pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 10.)  Plaintiffs filed
10  an opposition to the motion on August 2, 2024, and Chase filed a reply on August 12, 2024.
11  (Docs. 12, 13.)

## LEGAL STANDARD

13        The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal
14  sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.
15  1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of
16  sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901
17  F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to
18  relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A
19  claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw
20  the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.*
21  *Iqbal*, 556 U.S. 662, 678 (2009).
22        In determining whether a complaint states a claim on which relief may be granted, the
23  court accepts as true the allegations in the complaint and construes the allegations in the light
24  most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  However,
25  the court need not assume the truth of legal conclusions cast in the form of factual allegations.
26  *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not
27  require detailed factual allegations, "it demands more than an unadorned, the-defendant-
28  unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers

mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## ANALYSIS

Defendant Chase moves to dismiss on the grounds that plaintiffs fail to state a claim for wrongful payment of wire transfer. (Doc. 10 at 8–11.) Specifically, Chase argues that the allegations in the FAC do not sufficiently demonstrate Chase's actual knowledge of "a discrepancy between the [intended beneficiary's] name and the account number in Meridian's wire instructions" as is required for liability under section 11207 of the California Uniform Commercial Code.[4] (*Id.* at 8.) Chase also argues that plaintiffs' claim for declaratory relief fails because it is based on the deficient section 11207 claim. (*Id.* at 11.) As discussed below, the Court finds that the FAC fails to state a claim under both section 11207 and for declaratory relief.[5]

"Article 4A of the UCC governs fund transfers, which includes wire transfers . . . [and] has been adopted in California as Division 11 of the California Uniform Commercial Code." *Grand Bayman Belize, Ltd. v. Wells Fargo & Co.*, 514 F. Supp. 3d 1188, 1192 (C.D. Cal. 2021) (alteration in original) (quoting *Chino Com. Bank, N.A. v. Peters*, 190 Cal. App. 4th 1163, 1173 (2010)), *aff'd sub nom. Grand Bayman Belize, Ltd. v. Wells Fargo Bank, N.A.*, No. 21-55146, 2022 WL 171937 (9th Cir. Jan. 19, 2022). Division 11 "provide[s] a detailed scheme for analyzing the rights, duties and liabilities of banks and their customers in connection with the

---

[4] All subsequent statutory references are to the California Uniform Commercial Code, unless otherwise noted.

[5] As plaintiffs have not plausibly alleged defendant Chase's actual knowledge under section 11207, this Order does not consider the parties' arguments with respect to whether proximate causation is a required element under section 11207 and whether that element was sufficiently pled in the FAC.

authorization and verification of payment orders." *Zengen, Inc. v. Comerica Bank*, 41 Cal. 4th 239, 251–52 (2007).  Under Division 11, a "'[f]unds transfer' means the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order." Cal. Com. Code § 11104(a).  "'Originator' means the sender of the first payment order in a funds transfer." *Id.* at § 1104(c).  In this case, the parties do not dispute that Meridian was the originator, or that the three transactions at issue are funds transfers governed by Division 11 of the California Uniform Commercial Code.

Plaintiffs' wrongful payment of wire transfer claim is based on section 11207.  (Doc. 1-1 at ¶ 80.)  Subdivision (a) of that statute provides that "[s]ubject to subdivision (b), if, in a payment order received by the beneficiary's bank, the name, bank account number, or other identification of the beneficiary refers to a nonexistent or unidentifiable person or account, no person has rights as a beneficiary of the order and acceptance of the order cannot occur."  Cal. Com. Code § 11207(a).  Here, the account number specified in each payment order belonged to an existing and identifiable Chase account—the unnamed retiree's account—but the listed beneficiary on the wire transfers (Partner Personnel Management) did not match the name on the account.

Section 11207(b) applies when, as in the present case, "a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons." *Id.* at § 11207(b).  In this situation, the following rules apply:

> (1) Except as otherwise provided in subdivision (c),[6] if the beneficiary's bank does not know[7] that the name and number refer to different persons, it may rely on the number as the proper identification of the beneficiary of the order.  The beneficiary's bank

---

[6] Subsection (c) falls outside the scope of this case. That subsection "governs the obligation, as between the originating party and the originating party's bank, to pay an order accepted by the beneficiary's bank under . . . subsection (b)(1)." *TME Enterprises, Inc. v. Norwest Corp.*, 124 Cal. App. 4th 1021, 1031 n.13 (2004). The FAC does not assert any claim by Meridian, the originating party, against its bank, the originating bank. The dispute at issue here is between Meridian as the originator and Chase as the beneficiary's bank.

[7] "'Know' means to have actual knowledge." *TME*, 124 Cal. App. 4th at 1031.

6

> need not determine whether the name and number refer to the same person.
>
> (2) If the beneficiary's bank pays the person identified by name or knows that the name and number identify different persons, no person has rights as beneficiary except the person paid by the beneficiary's bank if that person was entitled to receive payment from the originator of the funds transfer. If no person has rights as beneficiary, acceptance of the order cannot occur.

Cal. Com. Code § 11207(b). Effectively, section 11207(b) provides a "safe harbor" for a bank that relies on the account number specified in a payment order as identifying the beneficiary of the order. *TME Enterprises, Inc. v. Norwest Corp.*, 124 Cal. App. 4th 1021, 1031 (2004) (collecting secondary sources). In other words, "section 11207(b) plainly permits beneficiary banks to accept wire transfers where . . . there is a mismatch between the name and number [on the payment order]—so long as the number identifies an account held at the bank, and the bank has no actual knowledge of the mismatch." *Grand Bayman Belize, Ltd. v. Wells Fargo Bank, N.A.*, No. 21-55146, 2022 WL 171937, at *1 (9th Cir. Jan. 19, 2022) (unpublished).

The reasoning behind this safe harbor provision is set forth in the official comment to section 4A-207 of the Uniform Commercial Code—which is persuasive in interpreting section 11207 because "the [California] Legislature adopted article 4A of the Uniform Commercial Code exactly as written" in enacting Division 11. *Zengen*, 41 Cal. 4th at 252. The official comment explains that "[a] very large percentage of payment orders . . . are processed by automated means using machines" which results in "substantial economies of operation and [reduces] the possibility of clerical error . . . ." U.C.C. § 4A-207 cmt. 2. Of course, a bank supplied with a name and account number could determine whether they match, "but if a duty to make that determination is imposed on the beneficiary's bank the benefits of automated payment are lost." *Id.* "Although the clear trend is for beneficiary's banks to process payment orders by automated means, Section 4A-207 is not limited to cases in which processing is done by automated means. A bank that processes by semi-automated means or even manually may rely on number as stated in Section 4A-207." *Id.*

Here, the FAC fails to sufficiently allege Chase's actual knowledge of an inconsistency between the named beneficiary of the wire transfers and the account holder. The FAC merely

asserts that an inconsistency existed and assumes that, therefore, Chase somehow knew of it. *See Serviacero Especiales SA DE CV v. JPMorgan Chase Bank, N.A.*, No. EDCV21380JGBSPX, 2021 WL 4805448, at *2 (C.D. Cal. July 15, 2021) ("Plaintiff alleges no facts that demonstrate that Defendant actually knew of the discrepancy. Rather, Plaintiff alleges that the wiring instructions named GML Steel SA as the beneficiary, and therefore that Defendant knew of the discrepancy."). The allegations regarding plaintiffs' lack of account activity with Chase, and Chase's alleged knowledge that the retiree's income came from pensions and retirement accounts, are insufficient to plausibly allege actual knowledge of a discrepancy absent an indication that these "red flags" led Chase to discover the inconsistency. *See Sliders Trading Co. L.L.C. v. Wells Fargo Bank NA*, No. 17-CV-04930-LB, 2017 WL 6539843, at *8 (N.D. Cal. Dec. 21, 2017) (finding argument that defendant bank should have noticed red flags surrounding transactions did not translate to actual knowledge); *Golden State Concessions LLC v. Wells Fargo Bank NA*, No. 21-CV-00014-KAW, 2021 WL 5002222, at *3 (N.D. Cal. Mar. 10, 2021) (finding actual knowledge plausibly alleged via allegations that defendant bank was obligated to, and did, confirm wire transfers were "payable to an account held by the actual person or entity the wire instructions set out as the beneficiary" where defendant bank's internal systems actually identified discrepancy).

Plaintiffs also allege that "[t]here exists a complete disconnect[8] between the designated beneficiary and account because the designated beneficiary and account name bear no resemblance to each other and have nothing common with each other." (Doc. 1-1 at ¶ 93.) However, even if in some circumstances such a disconnect may expose a bank to liability for processing a wire transfer, plaintiffs must still plausibly allege that the bank was aware of the difference between the designated beneficiary of the wire transfers and the name on the account. *See TME*, 124 Cal. App. 4th at 1034. The FAC fails to do so. Moreover, the FAC also fails to allege the name on the account or other specific facts that would support an obvious "complete

---

[8] "A 'complete disconnect' is when the designated name and account name bear no resemblance to each other and have nothing in common with each other." *TME Enterprises, Inc. v. Norwest Corp.*, 124 Cal. App. 4th 1021, 1034 (2004).

disconnect" between the designated beneficiary of the wire transfers and the account holder.

Finally, plaintiffs allege that "[w]ithin just 17 days, Chase processed three wire transfers into the Fraudulent Account, belonging to a retired individual, totaling $382,353.75. (Doc. 1-1 at ¶ 92.) But this allegation is of little use in determining whether Chase had actual knowledge of an inconsistency without allegations concerning how, and how quickly, the wire transfers were processed. *See Grand Bayman Belize, Ltd. v. Wells Fargo & Co.*, 514 F. Supp. 3d 1188, 1193 (C.D. Cal. 2021) (finding defendant bank did not have actual knowledge of mismatch where wire transfers were automatically processed in approximately seven seconds), *aff'd sub nom. Grand Bayman Belize, Ltd. v. Wells Fargo Bank, N.A.*, No. 21-55146, 2022 WL 171937 (9th Cir. Jan. 19, 2022). Additionally, even if the wire transfers in this case were processed manually, plaintiffs must still plausibly allege Chase's actual knowledge of the discrepancy. *See TME*, 124 Cal. App. 4th at 1033–35 (finding that evidence at trial showed bank relied on account number specified in wire transfer order, even though wire operator manually processed transfer).

For these reasons, plaintiffs fail to state a claim under section 11207. Plaintiffs' failure to do so forecloses declaratory relief because there is no "actual controversy" before the Court. 28 U.S.C. § 2201(a). Accordingly, the Court grants defendant Chase's motion to dismiss the claims asserted against it, with leave to amend. *United Data Servs., LLC v. Fed Trade Comm'n*, 39 F.4th 1200, 1208 (9th Cir. 2022) (leave to amend should be given if amendment could cure pleading defect).

///
///
///
///
///
///
///
///
///

9

**CONCLUSION**

For the reasons explained above:

1. Defendant Chase's motion to dismiss (Doc. No. 10) is granted;

2. The claims asserted against defendant Chase in plaintiffs' first amended complaint are dismissed, with leave to amend; and

3. Plaintiffs may file a second amended complaint within 21 days of the date of this order. If plaintiffs fail to file a timely amended complaint, the Court will dismiss the claims with prejudice and enter judgment for defendant Chase.

IT IS SO ORDERED.

Dated:   September 26, 2024

UNITED STATES DISTRICT JUDGE